UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN P. O'BOYLE,

   Plaintiff,

v.                                                                                                    Case No. 16-CV-969

GEORGINA R. WETTENGEL and
SERGEANT PIOJDA,

   Defendants.

## DECISION AND ORDER

Ryan P. O'Boyle is Wisconsin state prisoner representing himself in this 42 U.S.C. § 1983 action. The Honorable Pamela Pepper, the judge assigned to this case at the time, screened O'Boyle's complaint. (Docket # 8.) She allowed him to proceed against defendants Georgina R. Wettengel and Sergeant Piojda on claims under the Fourth Amendment regarding his initial arrest and charges for operating after revocation and obstruction/fleeing. (Docket # 8 at 7.) The defendants have moved for summary judgment. O'Boyle has also filed two motions, one for reconsideration of my decision to deny his motion for default (Docket # 47) and the other to strike the defendants' motion for summary judgment (Docket # 49). The defendants moved to strike O'Boyle's motion to strike. (Docket # 51.) I will address each in turn.

    *1.*     *Motion for Reconsideration*

Previously, O'Boyle moved the court to enter default against the defendants, arguing that "no legitimate answer or viable defense has been filed by the defendants." (Docket #

43.) I denied his motion, noting that the defendants filed not only an answer to his complaint but a motion for summary judgment as well.

Federal Rule of Civil Procedure 54(b) authorizes reconsideration of a court's non-final orders. *See Civix-DDI, LLC v. Hotels.com*, LP, 904 F. Supp. 2d 864, 866 (N.D. Ill. 2012) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretions of the . . . judge"). Granting a motion for reconsideration is appropriate when:

> (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court.

*Tatum v. Clarke*, No. 11–CV–1131, 2013 WL 6497697, *1 (E.D. Wis. Dec.11, 2013) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1885, 1191 (7th Cir.1990)).

In his motion for reconsideration, O'Boyle makes two arguments. First, he argues that the defendants did not file a legitimate answer to the complaint. This argument was already considered and rejected. O'Boyle presents nothing new that would make reconsidering that decision appropriate.

Second, he argues that the defendants failed to follow court-ordered discovery deadlines and therefore should not have been allowed to file for summary judgment. In his original motion, O'Boyle referenced a declaration. In his motion for reconsideration, O'Boyle clarifies that he intended to reference Docket # 34. That declaration states that the defendants "failed to comply with Court ordered deadlines regarding obtainment of discovery materials." (Docket # 34.) The discovery deadline was July 13, 2018. In his

2

declaration, O'Boyle references two letters attached to his declaration. The first, dated July 26, 2018, was sent to him by the defendants' attorney and asks him to complete an enclosed authorization to get records from the Department of Veterans Affairs. (Docket # 34-1.) The second, dated August 27, 2018, is from O'Boyle to the defendants' attorney. He states that he mixed up the discovery deadline, points out that the defendants sent him something after the July 13 deadline, and reiterates that he might be sending interrogatories. O'Boyle also asks about filing a joint motion for an enlargement of time. (Docket # 34-2.)

In his motion for reconsideration (and in this declaration), O'Boyle take issues with the fact that the defendants conducted discovery (asking for the authorization) after the July 13, 2018 deadline. He believes that their "failure" to comply with the deadline should have precluded them from filing for summary judgment. However, requesting discovery outside the deadline does not preclude the defendant from filing summary judgment. As I stated in my previous order, there is no basis to enter default under Fed. R. Civ. P. 55.

I also note that O'Boyle takes issue with the evidence the defendants presented in support of their motion for summary judgment. However, evidentiary issues are not properly brought in a declaration asking for default. That is appropriately addressed in a motion for summary judgment or at trial.

For these reasons, I will deny O'Boyle's motion for reconsideration.


2. *Motion for Summary or Default Judgment and Motion to Strike Defendant's Motion for Summary Judgment*

O'Boyle filed a motion he titled "Motion for Summary Judgment or Default Judgment and Motion to Strike Defendant's Motion for Summary Judgment." (Docket #

3

49.) In it, O'Boyle makes two arguments. First, he argues that the defendants failed to provide admissible evidence to support their proposed findings of fact. Second, he argues that the court should disregard the defendants' qualified immunity defense. The defendants responded that O'Boyle's motion must be stricken as untimely and that striking their qualified immunity defense would be improper. (Docket # 51.)

I will deny O'Boyle's motion. Despite its title, the substance of the motion is responsive to the defendants' motion for summary judgment. He did not need to file a separate motion to challenge the defendants' proposed findings of fact or their qualified immunity defense. To the extent O'Boyle believes that I should enter default against the defendants, he has presented no basis for me to do so. His disagreement with the defendants' position is, and was, addressed in his responsive pleadings to their motion for summary judgment. Because I am denying O'Boyle's motion, I will also deny as moot the defendants' motion to strike his motion.

### 3. *Motion for Summary Judgment*

#### 3.1 Undisputed Facts

As a preliminary matter, I note that O'Boyle initially did not respond to the defendants' proposed findings of fact. Under the Local Rules, a court can deem uncontroverted statements of fact admitted for purposes of summary judgment. Civil L.R. 56(4). However, after the defendants pointed out this failure, O'Boyle responded. In light of his incarcerated status and the fact he is representing himself, I will accept his responses to the defendants' proposed findings of fact. However, as the rules governing summary judgment require, I will consider only undisputed facts properly supported by admissible

evidence and will consider a fact disputed only if that dispute is supported by admissible evidence.

O'Boyle is currently incarcerated at Kettle Moraine Correctional Institution. (Defendants' Proposed Findings of Fact ("DPFOF") ¶ 1, Docket # 27 and Plaintiff's Response to DPFOF ("Pl.'s Resp.") ¶ 1, Docket # 41.) Both defendant Georgina R. Wettengel and defendant Ronald Piojda worked as police officers for the City of Oak Creek Police Department at the time of the incidents underlying this lawsuit. (DPFOF ¶¶ 2–3.)

At around 10:34 p.m. on October 15, 2010, Officer Wettengel saw a black truck traveling westbound on West Puetz Road in the city of Oak Creek, Wisconsin. (DPFOF ¶ 6.) The truck pulled to the side of the road due to a flat tire on the front passenger side. (*Id.*) Officer Wettengel stopped her squad car and exited the vehicle. (DPFOF ¶ 7 and Pl.'s Resp. ¶ 7.) The parties dispute whether O'Boyle was in or out of the car at this time. (*Id.*) According to O'Boyle, he was not in the car. (Pl.'s Resp. ¶ 7.) He was already trying to fix the flat tire. (*Id.*) Officer Wettengel, however, asserts that O'Boyle was still in the vehicle at the time. (DPFOF ¶ 7.) According to Officer Wettengel, O'Boyle's truck was stopped in a no parking zone where there was no shoulder and was obstructing traffic.[1] (DPFOF ¶ 8.)

O'Boyle told Officer Wettengel that everything was under control, that he had a ride on the way, and that she could go about her business. (DPFOF ¶ 9 and Pl.'s Resp. ¶ 9.)

---

[1] O'Boyle takes issue with the way the defendants have characterized the area. He claims that these facts—that it was a no parking zone and that his car was obstructing traffic—were not brought up until he filed this lawsuit. (Pl.'s Resp. ¶ 8.) He provided a declaration from his criminal defense attorney, which states that the arresting officers did not claim O'Boyle had pulled over his truck in a no parking zone or was obstructing during the criminal proceedings. (Dec. of Parker C. Mathers at ¶ 4, Docket # 42.) O'Boyle avers to the same in his own declaration, adding that Wettengel never told him the truck was in a no parking zone or was obstructing traffic during their encounter. (Dec. of Ryan P. O'Boyle at ¶¶ 3, 7–19.) However, at his deposition, he admits that he is "not a hundred percent sure" if the area was a no parking zone. (Dep. of Ryan P. O'Boyle at 17–18, Docket # 29-1.) Ultimately, though, where the truck was stopped does not change the outcome of the defendants' motion.

While she spoke to him, Officer Wettengel noticed that O'Boyle's eyes were glassy and that his breath had the faint odor of intoxicants. (DPFOF ¶ 10.) O'Boyle was uncooperative. (*Id.*) Officer Wettengel began to interrogate O'Boyle, asking him where he was coming from, how much he had to drink, and where he was heading. (DPFOF ¶ 11 and Pl.'s Resp. ¶ 11.) She asked O'Boyle for his driver's license, and he asked if he was under arrest. (DPFOF ¶ 12 and Pl.'s Resp. ¶ 12.) Officer Wettengel replied, "not yet." (*Id.*) O'Boyle did not think the traffic stop was lawful and refused to give Officer Wettengel his license. (DPFPF ¶ 13 and Pl.'s Resp. ¶ 13.) O'Boyle remained uncooperative and did not provide Officer Wettengel with his name. (DPFOF ¶ 14 and Pl.'s Resp. ¶ 14.) According to Officer Wettengel, O'Boyle provided his brother's name (Garrett O'Boyle), but O'Boyle contests this. (DPFPF ¶ 15 and Pl.'s Resp. ¶ 15.)

When Officer Wettengel called in the truck's information, dispatch told her that the truck was listed to Ryan P. O'Boyle and that O'Boyle's driving status was revoked. (DPFOF ¶ 16.) O'Boyle testified at his deposition that his license was not, in fact, revoked at the time. (DPFOF ¶ 17 and Pl.'s Resp. ¶ 17.) He tried three or four times to terminate the encounter with Officer Wettengel. (DPFOF ¶ 18 and Pl.'s Resp. ¶ 18.) According to Officer Wettengel, she asked O'Boyle to take a seat in his truck and told him that she and Officer Schultz, who was also on the scene, would help him change his tire. (DPFOF ¶ 19.) O'Boyle contends that there were no other officers present. (Pl.'s Resp. ¶ 19.) While Officer Wettengel ran the name "Garrett O'Boyle" for a current address and a warrant check, she observed O'Boyle exit his vehicle, walk across the street, and then run into the woods near condominiums located on West Puetz Road (the same road the vehicle was stopped). (DPFOF ¶ 20.) O'Boyle contends that he was never in his truck. (Pl.'s Resp. ¶ 20.) According to his

6

testimony, he picked up his jack stand, placed it in his truck, and asked Officer Wettengel if he was under arrest. (DPFOF ¶ 21 and Pl.'s Resp. ¶ 21.) Officer Wettengel said no (*id.*), and O'Boyle said good night, locked and shut his door, and then walked away (DPFOF ¶ 22 and Pl.'s Resp. ¶ 22).

Officers set up a perimeter southwest of Officer Wettengel's location. (DPFOF ¶ 23 and Pl.'s Resp. ¶ 23.) She had not yet positively identified O'Boyle. (DPFOF ¶ 24 and Pl.'s Resp. ¶ 24.) Officer Wettengel learned that Garrett O'Boyle's driving status was valid and there were no warrants out for his arrest.[2] (DPFOF ¶ 25 and Pl.'s Resp. ¶ 25.) After checking police records, Officer Wettengel obtained a photograph of and physical description for Ryan P. O'Boyle. (DPFOF ¶ 26.) Based on that information, she identified O'Boyle as the driver of the truck. (DPFOF ¶ 27.) About 15 to 20 minutes after Officer Wettengel first made contact with O'Boyle, defendant Sergeant Piojda located O'Boyle walking near South 15th Street and West Violet Drive in the City of Oak Creek. (DPFOF ¶¶ 28–29 and Pl.'s Resp. ¶¶ 28–29.) Officer Schultz (not a defendant) and Sergeant Piojda took O'Boyle into custody for operating after revocation and obstructing a police officer and transported him to the Oak Creek Police Department. (DPFOF ¶ 30 and Pl.'s Resp. ¶ 30.) At the station, O'Boyle's military ID identified him at Ryan P. O'Boyle. (DPFOF ¶ 31 and Pl.'s Resp. ¶ 31.)

       3.2       Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] O'Boyle takes issue with the defendants' misspelling of his brother's name. (Pl.'s Resp. ¶ 25.) He argues that because they misspelled "Garret," he never provided Officer Wettengel with his brother's name as he would have spelled it correctly. (*Id.*) However, whether O'Boyle provided him with his brother's name is not material to the disposition of the case.

law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

### 3.3 Analysis

O'Boyle was allowed to proceed on two claims under the Fourth Amendment: first, that Officer Wettengel violated his rights when she stopped behind his truck and questioned him and second, that Sergeant Piojda violated his constitutional rights because he lacked

probable cause to arrest O'Boyle. (Docket # 8.) The defendants move for summary judgment on both claims.

### 3.3.1 Officer Wettengel

The defendants argue that Officer Wettengel is entitled to summary judgment because she had the requisite reasonable suspicion to conduct an investigatory stop because O'Boyle's truck was obstructing traffic and stopped in a no parking zone. O'Boyle counters that (1) this is the first time the defendants have brought up the no parking zone and obstructing traffic and (2) the charges on which he was arrested were ultimately dropped because his license was not actually revoked at the time.

To conduct an investigatory stop, an officer must have "'specific and articulable facts which, taken together with the rational inferences drawn from those facts, reasonably warrant the intrusion.'" *United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir. 1997) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In this case, Officer Wettengel came upon O'Boyle and his truck pulled to the side of the road with a flat tire. Thus, stopping her squad car behind his truck and getting out to talk with O'Boyle did not constitute a seizure. *See United States v. Clements*, 522 F.3d 790, 794–95 (7th Cir. 2008) (explaining that the defendant had pulled his car to the side of the road voluntarily and holding that the officers pulling up behind an already-stopped car and flashing their lights and approaching the car did not constitute a seizure). Accordingly, she did not need reasonable suspicion to stop her squad car behind O'Boyle's already-stopped truck. That act did not violate O'Boyle's constitutional rights.

However, Officer Wettengel continued to interact with O'Boyle, which requires me to determine if the encounter rose to the level of a seizure and, if so, whether Officer Wettengel had the reasonable suspicion to conduct a seizure. The undisputed evidence is

that Officer Wettengel began speaking to O'Boyle, who told her that everything was fine, that he had a ride, and that she could go about her business. As Officer Wettengel spoke to O'Boyle, she noticed that his eyes were glassy and that his breath had a slight odor of intoxicants.³ At this point, Officer Wettengel began, by her own terms, to interrogate O'Boyle, asking him where he had been, how much he had to drink, and where he was headed. O'Boyle remained uncooperative, refusing to provide identification, and tried to terminate the encounter several times.

Whether a police and citizen encounter constitutes a seizure is an objective, not subjective, inquiry. In short, a seizure occurs when a reasonable person would not feel free to leave the presence of the police, or if leaving is impractical, when a reasonable person would not feel free to "decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 435–37 (1991). The Supreme Court has identified several factors to consider, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Based on the evidence, it does not appear any of these factors were present, though this list is not exclusive or exhaustive. *Id.*

On one hand, O'Boyle did attempt to terminate the encounter multiple times, and Officer Wettengel continued to ask him questions, told him to get back into his truck, and remained at the scene (suggesting he was not free to leave). But on the other, O'Boyle also

---

³ In his brief opposing the defendants' motion for summary judgment, O'Boyle asserts that Officer Wettengel never came closer to him that 21 feet. (Docket # 33 at 3.) However, he offers no sworn evidence to support this assertion. I will not consider it as evidence.

left the scene on foot (suggesting he felt free to leave). Even assuming the encounter eventually became a seizure, Officer Wettengel had reasonable suspicion to temporarily detain O'Boyle once she observed signs that he was intoxicated, coupled with the reasonable (and uncontested) inference that he had been driving the truck, as it is illegal to operate a vehicle while intoxicated. Wis. Stat. § 346.63. Therefore, Officer Wettengel did not violate O'Boyle's rights when she began interrogating him. She had specific and articulable facts on which to believe O'Boyle had violated the law, giving her a constitutional basis to seize O'Boyle. This is true regardless of where the truck was parked or if it was blocking traffic or whether O'Boyle gave her a false name, two facts with which O'Boyle takes exception. Because O'Boyle has presented no admissible evidence to counter the undisputed facts showing Officer Wettengel had reasonable suspicion that O'Boyle had committed the crime of driving while intoxicated, Officer Wettengel is entitled to summary judgment.

### 3.3.2 Sergeant Piojda

Sergeant Piojda arrested O'Boyle for operating while revoked and for obstructing an officer. He argues that there was probable cause to believe O'Boyle committed both offenses. O'Boyle argues that his license was not actually revoked at the time and that he did not obstruct Officer Wettengel's unlawful seizure and investigation.

Probable cause exists if, at the time of arrest, the officers possess knowledge from reasonably trustworthy information that is enough to warrant a prudent person in believing that a suspect has committed, or is committing, a crime. *United Stats v. Brown*, 366 F.3d 456, 458 (7th Cir.2004). Under Wis. Stat. § 343.44, it is a crime to operate a vehicle during a period of revocation. When Officer Wettengel spoke to dispatch, they informed her that

O'Boyle's license had been revoked. O'Boyle argues that because the charges were ultimately dismissed, there was no probable cause. But whether probable cause existed is determined at the time of arrest, not in hindsight. *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010) (internal citations omitted). Here, Officer Wettengel heard from dispatch that O'Boyle's license was revoked and conveyed that information to Sergeant Piojda. They therefore had reason to believe that O'Boyle broke the law. That their reasonable belief turned out to be incorrect does not change that. *Id.*

Sergeant Piojda also had probable cause to arrest O'Boyle for obstructing an officer. Under Wis. Stat. § 946.41(1), a person who "knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority" commits a misdemeanor offense. "Obstructs" includes, but is not limited to, "knowingly giving false information to the officer or knowingly placing physical evidence with intent to mislead the officer." Wis. Stat. § 946.21(2)(a). At the time of the arrest, Sergeant Piojda knew that O'Boyle had been uncooperative, would not give his identification to Officer Wettengel, and then left the scene on foot during an investigation. Even without considering evidence that O'Boyle gave Officer Wettengel a false name, the officers had probable cause to believe he had obstructed an investigation. As noted above, the undisputed facts demonstrate that Officer Wettengel had reasonable suspicion that O'Boyle had driven his truck while intoxicated. By failing to cooperate and leaving the scene, O'Boyle obstructed her investigation. That the charge was later dismissed does not negate the probable cause Sergeant Piojda had *at the time of the arrest*. Therefore, Piojda is also entitled to summary judgment.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion for reconsideration (Docket # 47) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment and motion for default judgment (Docket # 49) is **DENIED**.

**IT IS ALSO ORDERED** that the defendants' motion to strike the plaintiff's motion for summary judgment or default judgment (Docket # 51) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket # 25) is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment.  The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 22nd day of August, 2019.

                                         BY THE COURT:

                                         *s/Nancy Joseph*
                                         NANCY JOSEPH
                                         United States Magistrate Judge